Good morning, Your Honor. May it please the Court, my name is Alice Jensen. I am from the law firm of Fenwick & West, pro bono counsel for plaintiff appellants in this case, Robert John Foti and Kenneth Augustine. I'd like to reserve two minutes of my time for rebuttal, if Your Honor's pleased. No, thank you. In this case, the district court dismissed plaintiff's pro se complaint on the pleadings without reaching the merits of whether or not the government's photo identification requirement to enter a federal courthouse violates the constitutional rights of access of those who do not possess identification. As the record indicates, there are multiple facts that could materially influence this analysis. Therefore, the district court should have allowed this case to proceed to the merits phase. Now, do we know that Mr. Foti didn't possess identification, or do we know that he just didn't want to produce identification? We know that Mr. Foti and Mr. Augustine do not possess identification as a matter of strongly held principle. So they don't own any identification. It's not that they had it and they forgot it in their car, or... By identification, we mean pieces of paper that have their photographs on them, provided by the government? Government-issued identification, which is what the, as far as we can tell, what the government requires for you to enter the federal courthouse. But they might have such things as, oh, you know, PG&E bills with their name and address on them. Yes, potentially. What they object to on principle is the requirement that you get state-issued government identification, like a driver's license, for instance, to enter the courthouse. But presumably, they have many other pieces of identifying documents that would allow them to prove they say who they say they are. And would they have objection to providing, say, a PG&E bill with a name on it and an address? I don't think so, Your Honor. Do we know? But the point is that the district court never reached the merits, so there was no factual findings as to whether or not that would have been a sufficient form of identification. Okay. By dismissing on the pleadings, the district court precluded fact-finding, as I just stated, on whether or not a photo identification requirement is a necessary measure to accomplish a legitimate government interest. I'd like to highlight three things. First, that there was no factual finding because it was dismissed on the merits, I mean, dismissed on the pleadings, that whether or not a photo identification that state-issued is a necessary measure. Second, the court below precluded consideration on the merits of whether or not a less restrictive alternative is available that would provide greater or equal security at minimal cost. And third, the district court erred in holding that it did not have subject matter jurisdiction because controlling Ninth Circuit precedent establishes that the Administrative Procedure Act provides an explicit waiver of sovereign immunity. As to the first point, plaintiffs concede that protecting the courthouse is a legitimate interest and that the government has the right to enact security measures to protect to accomplish that goal. Now, I assume that the screening that took place in this case took place at the entrance to the building? Yes, Your Honor. Now. It's the entrance. Once you enter the front doors, the first thing, as it is in this building, the first thing you encounter is the magnometer and the extra machine to put your belongings in. And it was there that the request for government-issued photo ID was made? Yes. Now, of course, 450 Golden Gate is a government building that contains within it courtrooms. Correct. My question is, then, how do we turn this into a clean case of access to courthouse? Because it may well be that someone coming in, I'm not saying, Mr., this was true for Mr. Foti, but I'm saying that someone coming to the front door, coming to the guards, says, I'm going to the courthouse, or I'm going to the courtrooms, I, therefore, don't have to provide photo ID, but, in fact, he's going to the IRS, so he's going somewhere else. How do we, as a practical matter, how are we supposed to treat this as purely a courthouse case when, in fact, this screening is done at the entrance to the building? In this particular case, Mr. Foti was a pro se litigant in the underlying case. So he was listed on the docket for the summary judgment hearing or any other hearing that he was going to as a litigant. And so that would have been, we would have been able to determine, had the district court reached the facts, that he was, in fact, on the docket and that he was entitled to be there and, in fact, ordered to be there for pretrial conferences and other court proceedings. And if we hold, I mean, there's kind of a, kind of like a Chinese box logical puzzle here, if we hold that he has a right to go to the courtroom without presenting ID because he's on the docket, how are those guards supposed to know whether he's who he says he is? Right, Your Honor. And that is a bit of a catch-22, and the plaintiffs are sort of in a catch-22 in this sense because they're prevented from going into the courtroom to then challenge whether or not they need ID to go into the courtroom. So they sort of get in this loop that they can't get out of, which is why we would request that this court remand to the district court for factual findings. Because the, well, who he said, whether he is who he says he is, the fact of the matter is the security screening at the courthouse door is designed to detect weapons, basically. You walk through a metal detector, you put your belongings in the X-ray machine because they don't want to allow weapons into the courthouse. That makes sense. We concede that that is a legitimate security interest. Beyond that … Isn't it also security interest to find out who is going into the courthouse? For instance, a known repeating felon? Yes. The Court does have that interest. However, the … How can we tell that Mr. Foti isn't one of those? Well, the flashing of the identification in this case isn't … doesn't provide an additional measure of security, and it can't tell whether he's one of those because it's not checked against a list. It's not like the TSA, when you go to fly, checks your reservation against the no-fly list. In this case, it's simply literally a flash. You just flash your ID, they look at it, and they let you in. If you don't have one, they don't let you in. Police may know who they're looking for. But there is no evidence that they were matching identification against a list of who they were looking for. They may know the list in their minds. There is potential that they could know the list in their mind, Your Honor. If they don't do it exactly the way the TSA does it, I suppose there's some variety in Federal law enforcement. There is, and we concede that, Your Honor. Now, would that be a matter, though, of factual finding, as to say, as to do they have a list, do they care about a list, do they care about the identification of who might be coming in and so on? Yes, Your Honor, and that's exactly the point, which is the district court never reached that issue because it dismissed with prejudice on the pleadings. If the district court had gone on to the merits, we could have discovered facts as to whether or not the particular officers had a list in their mind, had a list on paper, what the policies were, whether or not there was a list. I thought they needed a list, right, yeah, okay. Right, but the fact is, is that there was no fact-finding on that issue, and this case was dismissed with prejudice. And what kind of relief are you seeking here? We're seeking that the court remand the case back to district court and reverse the dismissal with prejudice. And what kind of relief are you seeking in the district court? At the district court, the plaintiffs are seeking inductive relief against the to look at the facts and determine whether or not, A, the photo identification was a necessary measure, and, B, whether or not there is a less restrictive alternative for those who don't have identification. Are you seeking damages? They are seeking damages, Your Honor, on the Fourth Amendment claims, on the unreasonable searches and seizures when Mr. Foti was grabbed in a wristlock control hold, ejected from the courthouse without his shoes, which were still on the conveyor belt, and held, surrounded by officers, and not allowed to leave for 20 minutes. Do you have some procedural difficulties for failure to exhaust administrative remedies under the Federal TORS Claim Act? Yes. We do concede that the plaintiffs did fail to exhaust their administrative remedies. However, the Court here should, has the discretion and the power to consider this issue raised for the first time on appeal. This case actually falls squarely within the exception for considering an issue for the first time on appeal for two reasons, and the Court should entertain it. First, that important constitutional issues were raised by these pro se litigants, and that it's well established that pro se pleadings are treated with more liberality because they are drafted by untrained laypeople. And secondly, the – since this is a sovereign immunity, it's a particularly arcane and difficult area of the law, it's unreasonable to expect that a layperson would understand that. And more importantly, this case falls squarely within the exception. Arcane? It is arcane. And it goes back to the idea that the king cannot be sued. It's been around since before we were a nation. Understood, Your Honor. But it means there's the old idea that old process is due process, and sovereign immunity certainly isn't anything new. Understood. The problem with the – Do you really believe that your sovereign immunity waiver argument based on the AP 702? I mean, you think that that waives sovereign immunity? Absolutely, Your Honor. Presbyterian Church Procedure Act is based – Do you think this is final agency action? The – What happened at the courthouse is final agency action. The Presbyterian Church case actually addresses that agency action language and specifically states that it should not be used to hyper-technically parse the – Hyper-technically is a rhetorical device meaning that you don't agree. Correct, Your Honor. But the – yes. But we do think that this – Section 702 of the APA does waive sovereign immunity. It states it specifically. And the issue of whether this Court should consider it for the first time on appeal is – Final agency action was the Department of Homeland Security adopting this requirement, right? You didn't sue the Department of Homeland Security. You still haven't sued them. Correct. We did not sue the Department of Homeland Security. The statute that actually governs Homeland Security specifically states that it is not going to be interpreted as allowing for the creation of a national identity card. So there's no law that says that you have to have a national identity card or a government issued ID to exist as a member of this society. The clients – our clients have a deep and abiding belief that the increasing requirement for citizens to carry photo identification is a threat to constitutional liberty. This Court doesn't need to address that broader issue here. But the access to the courts is a fundamental right. And that should not be used as a mechanism to force people to get identification so that they can exercise their constitutional right and access important governmental rights. Now, we've taken you a little bit over time. Why don't we hear from the government, and then we'll give you a chance to respond. Thank you, Your Honor. Thank you very much, Your Honor. My name is Abraham Simmons. I'm an assistant United States attorney. I represent the defendant, Appelese, in this case. It is a very interesting case to the extent that Mr. Foti does require that he be permitted to walk into courtrooms without identifying himself. But not just courtrooms. Wait a minute. Federal buildings. Is he unwilling to provide his name? Your Honor, on page 10 of his complaint or so, he claims that he would like to enter a building anonymously. That means without saying who he is. Although we have just heard from opposing counsel that perhaps he is willing to identify something that identifies himself, I'm not sure whether now they're trying to say it has something to do with the picture identification or with the government's aspect of the identification. But the way that the complaint is written, clearly it says, I should be able to enter anonymously, i.e., without anyone ever knowing who I am. And that's not just the courthouse. It's the building where the courtroom is in. And I think that Your Honor did put your finger on one very troubling aspect of what happens when someone is permitted to do that in a Federal building, that is, the courthouses do share, and they share with others who may have other reasons for requiring security, not just the obvious reasons that are available to the courthouse. Also, I should apologize to the courts. The first time I filed a brief in this case in opposition to the pro se appellate briefs, it was November of 2005. Gilmour had not yet been decided. They did file an additional brief after getting counsel. And when I did my follow-up research, I did not look closely enough to find Gilmour. But obviously, that case blows quite a hole in some of the arguments that they would like to make, especially with respect to the Fourth Amendment. Your argument, excuse me, your brief both before and after, you're basically the same brief that you filed. Yes. Yes, Your Honor. You changed this. Maybe you, I don't know, maybe you changed a word or two, but it's — That's right. And I think I should have found Gilmour, and I should have explained that a little bit more. The Gilmour case does pretty well say that we're not going to be concerned with the request for identification. It's not a Fourth Amendment seizure, and it's not a violation, and that there are reasons. If you will look at how Gilmour decided the case, neither did Gilmour, as did the district court in this case, actually try and look at less restrictive alternatives or look at other things that they would like to require, in this case, on appeal. Let me ask you this about the sovereign immunity question. Putting damages to one side and asking only about injunctive relief against governmental officers, is the government claiming that it is immune from, based on future action by government officials? In that respect, Your Honor, I think it is very important to look at the precise defendant. I don't make that argument for all possible defendants in this case. How about the particular officers who have in the past and are likely in the future to restrain Mr. Foti from entering the building without identification? Yes. Does the government claim sovereign immunity for an injunctive suit against them? I believe so, Your Honor. On what basis? They are qualifiedly immune in this case. Oh, no. The qualified immunity goes only to damages, and I put damages to one side in my question. I'm asking only about prospective injunctive relief. Does the government claim sovereign immunity with respect to prospective injunctive relief as to individual officers who, at least according to the allegation, will prevent Mr. Foti from what he claims to be, his constitutionally protected access? The question is well understood now, Your Honor. And with respect to the allegations in this complaint, the answer is yes. Is there a case in which there may be more claim to sovereign immunity, even in that circumstance? Then the answer would be no. If there were any other, let me make sure, to answer my question, then, do you claim sovereign immunity as against a suit for injunctive relief against individual officers? Your answer is no. I do not find a case that says that we are entitled to that, Your Honor. Okay. And so with respect to what allegations or what complaints may arise in the future in which there may be a significant constitutional violation, perhaps, but we need to see that case in order to find out which laws are going to be used. Okay. But I think what we're dealing with when we're talking injunctive relief or prospective relief is there are obviously limitations to what the most important thing is. And I think that's what we're dealing with in this case, is there's a very long line of cases. There's a very long line of cases, most of them coming up under ex parte young and state officers, but there's a sort of a parallel line of Federal cases that say no sovereign immunity for that kind of relief. Isn't that right? That's right. Yeah. Okay. If there are other precise questions, I think we pretty well understand the limitations of the Fourth Amendment claims in this case. There are no – there is no Fifth Amendment violation that has been made out in the complaint. I think what's important to look at is the difference between the – There's no due process complaint here? Not in this – there's no violation as alleged in the complaint. Perhaps the best thing I could do with the time remaining, Your Honor, is to pay very close attention to the allegations that were made in the complaint, because things do begin to shift as we get on to appeal. I think it's very important to look at pages 4, 7, and 9, which end up being on pages 33, 36, and 37 of the excerpts of record. They are the beginnings of paragraphs 7, 8, and 9. And what you find when you look at these paragraphs, Your Honor, is the claim about the Fourth Amendment being about the right to step in and ignore the request to stop. Yeah, no, I'm more interested in the access to the courthouse claim. What is your argument that the government has more than a security-based interest in preventing access? That is, I think we all agree, it's common ground probably for everyone in this courthouse, maybe everyone in the entire country, that the government has an appropriate interest in protecting the security and the safety of people in the courthouse. Yes. But there's some subsidiary questions, and that is, what does the government have a right to ask for in furthering or protecting that interest? And what's your argument as to why the government is entitled to ask for, I'll take this version of the plaintiff's claim, government-issued photo ID, assuming that the government is going to conduct all kinds of magnetic searches, X-ray searches, strip searches, and so on? Well, you raise an interesting point with respect to why identification. In that regard, I would posit that the courts have an interest in identifying who is in court. The courts have an interest, separate and apart from security, from knowing, for all the same reasons that we don't require, we don't allow even, anonymous filings in court or we don't permit filings to be made without persons, without it being public, so that we have an interest in understanding who is who in court. Yes. You know, there's something sort of odd about this case, because Mr. Foti claims he doesn't want to identify himself, and there may be some issue as to what form of identification we're talking about at the door, but it's clear he's going to identify himself when he gets to court because he's got a lawsuit. Exactly. Exactly the point, Your Honor. So at least to the extent that you are asking what interest other than security is there in identifying the person, clearly we have to know who he is, and, in fact, he's telling us the truth. But I assume he's conceded, at least passively, that he's going to identify himself when he gets to Judge Ilson's courtroom. That's right. The guts of his argument is, I have to get up there because I'm in a lawsuit. Now, to be clear, not all of the plaintiffs in this case have raised that precise argument. Some wanted to witness what was going on in the court. So it is important to address, I think, those the arguments of the witnesses as well. And with respect to that, we think, yes, it's still important to understand that not all of the reasons and not all of the procedures have been put together before this court. But that was because of the procedural aspects of where this court came. You saw in Gilmour that, with respect to some policies, it is not wise to make less than an in-camera presentation of what all the rules are. In this case, it may be that the act of requesting identification may lead to some sort of investigation. It may be that there is a list in the heads, or there may be just the chance that the production of an identification identifying someone as Osama bin Laden or something of the sort would trigger some sort of reaction other than to just let them through. It is not just pro forma, and it is required. And, in fact, when I printed out the schedule for this particular argument, it said right there on the bottom, ID required to get into the courtroom. There's a reason for that. There's a reason why this court requires it. There's a reason why the district court does. As to each and every reason, we didn't get that far because there was not a sufficient enough claim as presented. Mr. Foti walked into the courtroom. When asked to stop, the marshals told him, please stop. He said he objected loudly and did not. That's in the complaint. That's what we needed to know. That's why this case did not go any further. With respect to the FTCA claims, there was no administrative complaint filed. That's not just a matter of is there some way of addressing a claim on appeal, as we heard by opposing counsel. That is, that claim is gone forever because there was not within the two years an administrative complaint filed. That's not a complaint that we can, that is challengeable just because it was with prejudice or without prejudice. The claim is gone. They can always, if they want to again, try and create additional facts, different facts, and come again before this court if they think that there is a way to get in. But as pled, with the facts that we already know, with what's admitted, there's nothing more to do with this case. We would request that you affirm. Thank you. Thank you. Response? Thank you, Your Honor. With respect to the Federal Torts Claim Act, that statute doesn't control the constitutional issues in this case. We concede that plaintiffs did not exhaust their administrative remedies. However, that's the reason that we request remand and reversal of the dismissal with prejudice so that they can be allowed to amend their complaint after they exhaust their administrative remedies. As to the issue of whether or not Mr. Foti, Mr. Augustine are willing to state their name or otherwise identify themselves with something other than government issued ID, the fact of the matter is we just don't know because the facts are not developed in this record. I will let you know that there is a less restrictive alternative. In fact, the irony was not lost upon us when we saw the notice of hearing that said photo ID is required. In fact, Mr. Foti, Mr. Augustine, and Mr. Gilmour of Gilmour v. Gonzales are in the courtroom today, Your Honor. None of them came in with ID. They were signed in by counsel. There is another way to get people without identification into the courthouse. It's difficult to sign in by counsel if you're appearing pro se. Understood, Your Honor. That's why we argue that there needs to be a less restrictive alternative to get into the courthouse, because you can't always be signed in by counsel, especially if you're representing yourself. As to the Gilmour v. Gonzales case, that was an airline case, and opposing counsel suggests that the Fourth Amendment issues are not, in this case, are precluded by the Gilmour case. However, the Gilmour case is one that's raised in the airline context, and the Ninth to travel by airplane, by commercial airplane. And that's a huge distinction because there's no constitutional right to travel by airplane, however there is a constitutional right to access the courts. The constitutional right to travel, Palacula v. Connecticut, right? Understood, yes, but there's no constitutional risk. A common carrier. Understood. And refuse you if you pay the fare. Right, and the fact of the matter is that Gilmour's on his way on Monk, okay, here we go. And that's not my case to argue, Your Honor. But the fact of the matter is that the Ninth Circuit did uphold a less restrictive alternative, a secondary security screening that could be implemented at the courthouse door for very minimal cost because the number of people who don't have identification is relatively small. And that actually would provide greater security than the flashing of identification because the officers would be able to confirm through visual and physical search of a person's body and their belongings that there are no weapons. And so that actually provides greater security, which is the justification offered for the identification requirement. Thank you, Your Honor. Thank you very much for your argument. The case of Bodie v. McHugh is now submitted for decision.
judges: Hug, W. Fletcher, Bea